## THE FIRST NATIONAL BANK OF WILMINGTON *vs.* NATHAN LIEBERMAN.

New Castle County, February Term. 1895.

**Judgment. Jurisdiction.**—When a party has elected to proceed in Chancery in a case, the Superior Court will not entertain an application to set aside the judgment in such case until the matter is finally determined in Chancery.

**Practice.**—Upon a motion to discharge a rule to show cause why a judgment should not be set aside, for want of jurisdiction, the Court will hear that motion first ; and the attorneys for the motion have the opening and the closing.

**Costs.**—Upon the discharge of such rule the costs are to be paid by the petitioner for the rule.

This was an application for a rule to set aside a judgment and execution which were alleged to be void because the judgment was entered after the cause of action was barred by the statute of limitations.

*Nields,* for the defendant, made application for a rule to show cause why the judgment of the First National Bank of Wilmington vs. Nathan Lieberman, being No. 300 to the February Term A. D. 1893, should not be set aside. The rule was granted upon the affidavit of Nathan Lieberman setting forth : That he was one of the sureties upon a bond of Peter T. E. Smith, executed on the first day of November A. D 1879, conditioned for the faithful discharge of the duties of said Peter T. E. Smith as Teller of the First National Bank aforesaid, to which position he had been elected; annexed to which bond was an authority to enter judgment jointly and severally. That on the 24th day of February A. D. 1893, more than fourteen years and three months after the date of said bond, the plaintiff caused judgment to be entered against him severally, and that said plaintiff on the———day of January A. D. 1895, caused a writ of *alias fi. fa.,* being No. 91, returnable at

the February Term A. D. 1895, to be issued on said judgment and delivered to the Sheriff of the said county; under and by virtue of which writ the said Sheriff levied upon and took in execution the goods and chattels of the said defendant; and that no action can be brought in this State upon any bond given to the President, Directors and Company, of any bank by any officer of such bank for the faithful discharge of his duties against either the principal or surities, after the expiration of two years from the accruing of the cause of action; and that no action can be brought and no proceedings had upon any such bond or upon any judgment thereon, against either the principal or sureties for any cause of action accruing after the expiration of six years from the date of such bond. That said execution was unlawfully issued, and that the judgment and execution were both null and void.

*Vandegrift,* for the plaintiff, filed an affidavit of James P. Winchester, President of the First National Bank aforesaid (the same being in the nature of an answer), stating among other things the following: " That the judgment above stated was entered upon the joint and several bond given by the said Peter T. E. Smith with the said defendant therein, to wit, Nathan Lieberman, as one of the sureties thereof, and when said defalcation, embezzlement or misappropriation on the part of the said Smith was discovered the judgment above stated was entered against the said Nathan Lieberman as one of the sureties upon said bond. That at the same time judgment was entered upon another bond against the said Nathan Lieberman as surety as aforesaid, which last mentioned bond was dated July, A. D. 1885 ; that upon the latter bond an execution was issued, whereupon said Nathan Lieberman filed a bill in the Court of Chancery of the State of Delaware in and for New Castle county praying among other things that the said First National Bank, of Wilmington, plaintiff in said judgments, be restrained from taking any proceedings upon either of said judgments, and they and each of them be declared null and void. That a preliminary injunction issued out of the said Court of Chancery whereby the said bank, its officers, agents and attorneys were en-

joined from taking any proceedings upon said judgments or either of them until the further order of the Court of Chancery in. that behalf. That an answer was filed by said bank and duly sworn to by deponent, setting forth the defence of said bank to said bill in equity, and thereafter an examiner was appointed to take the testimony in the said suit in chancery and the taking thereof is still now in progress."

On March 16, 1895, *Vandegrift*, for the plaintiff, appeared and stated to the Court that his client had been enjoined by the Chancellor from issuing the said execution, and that the issuing of the same was an inadvertence, and asked the Court that the execution might be quashed. The Court ordered the execution quashed.

The rule came on to be heard on the 20th day of March, A. D. 1895, and thereupon counsel for the plaintiff moved to discharge the rule, and claimed that they should have the opening and closing.

*Nields*, for the defendant, objected.

LORE, C. J. We think the preliminary application you make here to have the rule discharged, on the ground of want of jurisdiction, without respect to the merits, ought to be heard by us first, because it disposes of this whole matter. It has been the uniform practice, so far as we know, where a preliminary question comes up in *limine* which disposes of the matter, on the ground of want of jurisdiction, or for any other cause that does not go to the merits, to hear that first, and the party making the motion has the opening and closing.

*Vandergrift* and *Byrne* for the discharge of the rule, contended that the defendant could not be allowed to open the judgment and plead the statute of the limitations.

Because the Court of Chancery has jurisdiction of the subject matter, and the rule applies that where two courts having concurrent jurisdiction, the one obtaining jurisdiction first will maintain

it to the end and all other courts will abstain from interference. *Brooks vs. Delaplaine*, 1 Md. C. 354; *Ex parte Robinson*, 6 Mc-Lean 355; *Mail vs. Maxwell*, 107 Ill. 554; *Conover vs. Mayor*, 25 *Barb*. 513; *Clary vs. Hoagland*, 6 Cal. 685, 688.

That equity has concurrent jurisdiction here with law is clear; *Sparks vs. Farmers' Bank*, 3 Del. Ch. 230; *Staats vs. Herbert*, 4 *id*. 516; *Kersey vs. Rash*, 3 *id*. 332.

Equity having first obtained jurisdiction will oust law. *Beeson vs. Beeson*, 1 Harring. 394; *Beeson vs. Elliott*, 1 Del. Ch. 368; *Central Trust Co. vs. So. Atlantic & Ohio Ry. Co.*, 57 Fed. Rep. 3.

The right to inquire into and set aside a judgment belongs more properly to a court of equity, and especially when the plaintiff is not attempting to enforce it by execution. *Townsend vs. Townsend*, 5 *Harring* 20; *Plunkett vs. Dillon*, 3 Del. Ch. 509.

If this case could be acted upon here and equity ousted of its jurisdiction it would not be done if it would be sending the parties out only to return again; *id*.

That they would return is certain, because, if the defendant, as appears from the affidavit filed for obtaining the rule, is to rely upon the statute of limitations, it must be pleaded. *Whitaker vs. Parker*, 2 Harring. 416; *Parker vs. Whitaker*, 4 Harring. 527.

This is virtually an effort to amend the pleadings after judgment entered, and it does not go to the real merits; *id*.

And if pleadable we would apply to equity to restrain defendant from pleading the statute. *Lamb vs. Martin*, 9 Atl. Rep. 748; *Doughty vs. Doughty*, 10 N. J. Eq. 347; *Sparks vs. Farmers' Bank*, 3 Del. Ch. 305.

But the plea of statute of limitations is not regarded with favor by the court, and nothing will be done to give opportunity to plead the statute. *Burton vs. Waples*, 3 Harring. 75; *Waples vs. McGee*, 2 Harring. 444.

Whether or not the Court of Chancery has jurisdiction to inquire into the validity of the above stated judgment, the defendant therein having taken the said judgment into the Court of Chancery cannot while the proceedings which he himself instituted

are still pending, go into a court of law and seek to have the court of law investigate substantially the same questions which he has made the subject matter of his bill in equity. For these reasons the present rule should be dismissed.

*Nields*, in support of the rule. Undoubtedly the Court of Chancery has jurisdiction over the parties, but it has no jurisdiction or control over the records of this court; hence if the record of a judgment is a nullity it is here that the remedy should be sought.

CULLEN, J. Even if it be granted that there is no jurisdiction in Chancery, yet after a party has submitted himself to the decision of that Court can he be permitted to commence any proceedings with respect to the same subject matter in any other court.

*Nields* (resuming). The question is how far we are concluded by the proceeding in the Court of Chancery. We contend that the judgment was a nullity when it was entered. If that be the case the only result of further proceeding in the Court of Chancery would be to reach the conclusion that the remedy was here, not there ; *Grimshaw vs. City of Wilmington,* 5 Del. Ch. 183.

LORE, C. J., announced the decision of the court. Suppose in view of the fact that the defendant in the judgment has elected to invoke his relief in the Court of Chancery we think that it is necessary for him to pursue that remedy until a decision is reached there. If he had asked that the plaintiff be restrained until an application could be made to this court, his position would be logical and this proceeding might be entertained. Not having done so, we think the case must be concluded in the Court of Chancery, as was done in *Grimshaw vs. City of Wilmington,* and we therefore discharge the rule.

*Vandegrift,* for the plaintiff, asked the Court if the costs did not fall upon the plaintiff in the rule where the rule was discharged.

*Nields,* for the defendant, objected, inasmuch as it was admitted that the execution had been irregularly issued after the injunction in Chancery was awarded.

LORE, C. J.: Until the case is concluded in the Court of Chancery, we have no jurisdiction in this court. The plaintiff could have proceeded in Chancery, if he had seen proper, for contempt in issuing the execution, which would have carried costs. The rule here being discharged, the costs fall upon the petitioner.